UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:25-CR-00029-1-DCLC-CRW |
| | ) |
| JONATHAN RYAN FELLERS | ) |

**MEMORANDUM OPINION AND ORDER**

Earlier this year, a federal grand jury indicted Defendant Jonathan Ryan Fellers on one charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [Indictment, Doc. 7, at 1]. Section 922(g)(1) outlaws the possession of a firearm by any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). So, in short, a conviction under § 922(g)(1) will disarm Mr. Fellers, who now argues that § 922(g)(1) violates the Second Amendment as it applies to him, [Def.'s Mot. to Dismiss, Doc. 19], or based on his individual circumstances, *see Seling v. Young*, 531 U.S. 250, 271 (2001) (Thomas, J., concurring) ("Typically an 'as- applied' challenge is a claim that a statute, '*by its own terms*, infringe[s] constitutional freedoms in the circumstances of [a] particular case.'" (quotation omitted)).

"[L]egislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous—so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is actually not dangerous." *United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024). Mr. Fellers shoulders the burden of demonstrating that he is not dangerous, *id.* at 662, and in determining whether he has discharged this burden, the Court "may consider [his] entire criminal record," *id.* at 659–60, and it "must focus on [his] specific characteristics," *id.* at 657. If his prior convictions fall into "certain categories of past

convictions," then they "are highly probative of dangerousness," *id.* at 658, and he "will have a very difficult time, to say the least, of showing he is not dangerous," *id.* at 663.

> A person convicted of a crime is 'dangerous,' and can thus be disarmed, if he has committed (1) a crime 'against the body of another human being,' including (but not limited to) murder, rape, assault, and robbery, or (2) a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary.

*Id.*

Mr. Fellers has over a dozen prior convictions. They include a conviction for aggravated assault in 2005, [United States's Ex. 8, Doc. 27-6, at 1–2; United States's Ex. 12, Doc. 27-10, at 2], a conviction for reckless aggravated assault in 2005, [United States's Ex. 9, Doc. 27-7, at 7; United States's Ex. 12, Doc. 27-10, at 2], and two convictions for aggravated burglary, one in 1999 and another in 2013, [United States's Ex. 10, Doc. 27-8 at 1–3; United States's Ex. 12, Doc. 27-10, at 2, 3, 43]. His convictions for aggravated burglary fall within the second category—crimes that tend to "put someone's safety at risk" and "justify a finding of danger." *Williams*, 114 F.4th at 659. And his convictions for aggravated assault fall within the first category—crimes against the person—and "speak directly to whether [he] is dangerous." *Id.* at 658; *see id.* (recognizing that "[t]his historical category was filled with dangerous and violent crimes like murder, rape, *assault*, and robbery" (emphasis added) (citation omitted)). Seizing on these convictions, the United States maintains that Mr. Fellers cannot satisfy his burden of showing that he is not dangerous because "many of" his prior convictions "are in the first two categories" and "show that he is dangerous." [United States's Resp., Doc. 27, at 2].

A prior conviction that falls within the first category is "at least strong evidence that an individual is dangerous, if not totally dispositive on the question," and "[i]t is hard to see how someone who commits such a dangerous and violent act may overcome the presumption that

2

they are dangerous." *Williams*, 113 F.4th at 658. Mr. Fellers's convictions for assault therefore require him to overcome an "extremely heavy" burden, *id.*, and his conviction for aggravated assault in 2005 is especially troublesome because he assaulted a police officer, [United States's Ex. 8 at 1–2]; *see Roberts v. Louisiana*, 431 U.S. 633, 636 (1977) (stating that society has "a special interest in affording protection to these public servants who regularly must risk their lives in order to guard the safety of other persons and property" (footnote omitted)).

His assault of the police officer in 2005 was violent by any standard. The officer was dispatched to Mr. Fellers's grandmother's house to execute warrants for Mr. Fellers's arrest. [United States's Ex. 8 at 1]. When the officer entered the house with the grandmother's consent and placed Mr. Fellers under arrest, Mr. Fellers punched him in the face multiple times, pushed him to the floor, dragged him outside to his vehicle, started the vehicle, and threatened to use the vehicle to ram the officer into the house. [*Id.*]. Mr. Fellers did not relent until the officer unholstered his gun "in fear for [his] life." [*Id.*]. His assault of the officer is by itself enough to establish that he is dangerous, and it therefore scuttles his contention that § 922(g)(1) is unconstitutional as it applies to him. *See Williams*, 113 F.4th at 663 ("A person convicted of a crime is 'dangerous,' and can thus be disarmed, if he has committed . . . a crime 'against the body of another human being,' including . . . assault[.]"); *id.* at 662 ("That offense *alone* is sufficient to conclude that [the defendant], if armed, presents a danger to others or the public." (emphasis added)); *see also United States v. VanOchten*, 150 F.4th 552, 561 (6th Cir. 2025) ("From this incident *alone*, [the defendant] has demonstrated—as the district court found—that he presents a clear 'threat to the public.'" (emphasis added)).

In arguing otherwise, FDSET asks the Court to conclude that a person who assaults an officer—and, in the process, acts out a threat to use a vehicle as a lethal weapon and does not

3

stop until the officer draws his gun—is not dangerous. FDSET musters no persuasive support for this argument. Although it asserts that Mr. Fellers is not dangerous because "Tennessee's Aggravated Assault statute does not necessarily require actual violence or force," [Def.'s Mot. at 10], the *specific facts* of Mr. Fellers's criminal history show that his assault of the officer did involve violence and force, and that he is therefore dangerous, *see Williams*, 113 F.4th at 663 ("[D]istrict courts should make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction."); *see also VanOchten*, 115 F.4th at 560 ("[T]he specific details of a person's past crimes help us determine whether he poses a clear threat to the public today." (citing *id.* at 659–60)).

FDSET goes on to argue that Mr. Fellers is not dangerous because of the "staleness" of his convictions for aggravated assault, which occurred twenty years ago in 2005. [Def.'s Mot. at 13]. But "*Williams* states that a district court may 'evaluate a defendant's entire criminal record[,]' and thus, the consideration of older convictions in the determination of a defendant's dangerousness is not precluded." *United States v. Smith*, No. 3:22-CR-57-TAV-DCP, 2024 WL 5040930, at *6 (E.D. Tenn. Dec. 9, 2024) (alteration in original) (quoting *Williams*, 113 F.4th at 663); *see United States v. Vaughn*, No. 23-5790, 2024 WL 4615853, at *1–2 (6th Cir. Oct. 30, 2024) (stating that the defendant's conviction for aggravated robbery, which occurred in 2002, is "highly probative, and alone, would almost certainly be sufficient to conclude that the defendant presented a danger to the public such that [he] could be constitutionally disarmed" (citing *Williams*, 113 F.4th at 662)); *see also United States v. Williams*, No. 24-1244, 2025 WL 1089531, at *1 & *1 n.2 (6th Cir. Apr. 11, 2025) (suggesting that convictions for some offenses, like murder, may be too serious for a defendant to overcome a finding of dangerousness even

with time and rehabilitation); *see also United States v. Pickett*, 757 F. Supp. 3d 813, 818 (M.D. Tenn. 2024) ("Although [the defendant's] drug trafficking convictions are several years old, it appears he spent a significant amount of time in prison between the ages of 24 and 30. The Court agrees with the Government that this is 'a reality that diminishes the force of [the defendant's] claim that his convictions are dated.'").

FDSET might have a better argument if Mr. Fellers had just a lone-standing conviction for assault in 2005, but Mr. Fellers has two convictions for assault, and both of those assaults involved aggravated circumstances. In addition, his entire criminal history, which is extensive, contains many more convictions, and at least four of them—the aforementioned aggravated assaults in 2005 and the two aggravated burglaries in 1999 and 2013—sit atop *Williams*'s first two categories, making them "highly probative of dangerousness." *Williams*, 113 F.4th at 658. And, notably, FDSET is too dismissive of Mr. Fellers's "post-2005 record," downplaying it because it "includes only burglary," [Def.'s Mot. at 12], but Mr. Fellers's latest conviction for aggravated burglary in 2013 belongs in *Williams*'s second category and is therefore a crime that tends to "put someone's safety at risk, and thus, justif[ies] a finding of danger." *Williams*, 113 F.4th at 659; *see id.* at 659, 663 ("Courts have recognized that burglary is dangerous because it 'creates the possibility of a violent confrontation between the offender and the occupant.' . . . . A person convicted of a crime is 'dangerous,' and can thus be disarmed, if he has committed . . . a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and *burglary*." (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1999) (emphasis added))).

Finally, the Court, at Mr. Fellers's request, held a hearing and heard testimony from multiple witnesses—his mother, his brother, and a family friend, Betty Caudill—about whether

they considered Mr. Fellers to be dangerous. Each of them testified that they did not deem Mr. Fellers to be dangerous, but during cross examination, his mother and Ms. Caudill stated that were not familiar with much of his criminal history—including his aggravated assault of the police officer in 2005—and his brother stated that he did not know whether Mr. Fellers's assault of the police officer meant Mr. Fellers is dangerous. These witnesses' testimonies were therefore neither informative nor reliable on the question of dangerousness. *See Williams*, 113 F.4th at 65 (stating that an analysis of dangerousness "necessarily requires considering the individual's entire criminal record"); *Neuhard v. United States*, 119 F.4th 1064, 1072–73 (6th Cir. 2024) ("[W]e 'give great deference to the district court's credibility determinations.'" (quotation omitted)); *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) ("[T]he District Court was in the best position to judge credibility[.]");

When a defendant has prior convictions that place in *Williams*'s first two categories, he "will have a very difficult time, to say the least, of showing he is not dangerous," *Williams*, 113 F.4th at 663, and Mr. Fellers, who has multiple convictions of this sort, is no exception. His criminal record shows that he is dangerous, and § 922(g)(1) is therefore constitutional as it applies to him. *Id.* at 662–63. Having failed to discharge his burden of demonstrating that he is not dangerous, he is not entitled to the dismissal of the indictment, and his motion to dismiss the indictment [Doc. 19] is therefore **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge